UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, et al., | Case No. 25-cv-09109-LB |
| Plaintiffs, | **ORDER GRANTING IN PART DEFENDANTS' PARTIAL MOTION TO DISMISS** |
| v. | Re: ECF No. 40 |
| U.S. COAST GUARD, et al., | |
| Defendants. | |

**INTRODUCTION**

This case is about the U.S. Coast Guard's process for designating vessel-routing measures off the California coast, in waters where endangered species feed and migrate. The plaintiffs, Center for Biological Diversity and Friends of the Earth, claim that the Coast Guard (1) did not complete consultation required by section 7 of the Endangered Species Act (ESA), 16 U.S.C. § 1536(a)(2), about routing measures addressed in its port-access route studies (PARS) for Los Angeles/Long Beach and San Francisco Bay and in its Pacific Coast Port Access Route Study (PAC PARS) (claim one), (2) failed to prepare an environmental assessment or environmental impact statement under the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332(C), thereby unlawfully withholding or unreasonably delaying agency action in violation of the Administrative Procedure Act (APA), 5 U.S.C. § 555(b) & 706(1) (claim two), and (3) unlawfully withheld or unreasonably

ORDER – No. 25-cv-09109-LB

delayed the post-study rulemaking notices for the Los Angeles/Long Beach PARS, the San Francisco Bay PARS, and the PAC PARS, in violation of the Ports and Waterways Safety Act (PWSA), 46 U.S.C. § 70003(d)(2), and the APA, 5 U.S.C. § 555(b) & 706(1) (claim three).[1]

The defendants (the Coast Guard and its Commandant) moved to dismiss (1) claims one and two, to the extent they assert that the PAC PARS required action under the ESA and NEPA, as not ripe because the PAC PARS consists of non-binding recommendations, not final agency action, (2) claim two, to the extent that it asserts that the Coast Guard was required to comply with NEPA for the routing measures recommended in the Los Angeles/Long Beach PARS and the San Francisco Bay PARS (adopted in 2012 and effective 2013), as time-barred under 28 U.S.C. § 2401(a)'s six-year statute of limitations and barred by res judicata because the plaintiffs challenged the traffic-separation schemes in an earlier lawsuit, and (3) claim three regarding unreasonable delay of notice of rulemaking, to the extent that it challenges the delay in rulemaking for the Los Angeles/Long Beach PARS and the San Francisco Bay PARS, as barred by res judicata because the plaintiffs litigated the same routing measures against the Coast Guard in the earlier lawsuit.[2]

The court grants the motion as to claims one and two and denies it as to claim three. First, the PAC PARS recommends (but does not implement) routing measures. It is not agency action under the ESA or final agency action under the APA, and the challenges to it are premature. The court dismisses the PAC PARS portion of claims one and two and, because the plaintiffs disclaimed any NEPA challenge to the 2011 PARS in claim two,[3] claim two entirely, which moots the statute-of-limitations and res-judicata arguments directed at claim two. Second, the issue is close, but claim preclusion does not bar the plaintiffs' unreasonable-delay challenge to the Los Angeles/Long Beach PARS and the San Francisco Bay PARS, given the Coast Guard's January 2026 change of position manifested in its January 2026 withdrawal of its request for consultation on codification.

---

[1] First Am. Compl. (FAC) – ECF No. 33 at 24–28 (¶¶ 103–32). Citations refer to material in the Electronic Case File (ECF); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF No. 40 at 9.

[3] Opp'n – ECF No. 44 at 10, 30 (limiting claim two to the PAC PARS).

The remaining claims are claim one's challenge to the Los Angeles/Long Beach PARS and the San Francisco Bay PARS under the ESA and claim three's challenge to the Los Angeles/Long Beach PARS, the San Francisco Bay PARS, and the PAC PARS under the PWSA.

## STATUTORY FRAMEWORK

### 1. Endangered Species Act (ESA)

Under the ESA, agencies must ensure that actions they authorize, fund, or carry out are "not likely to jeopardize the continued existence of any endangered species or threatened species" or adversely modify their designated critical habitat. 16 U.S.C. § 1536(a)(2); *Karuk Tribe of Cal. v. U.S. Forest Serv.*, 681 F.3d 1006, 1120 (9th Cir. 2012) (en banc). Federal agencies like the Coast Guard must consult with the relevant wildlife agency (here, the National Marine Fisheries Service) whenever their actions "may affect" a listed species. 50 C.F.R. § 402.14 (a)–(b); 16 U.S.C. § 1536(a)(2). "Any possible effect, whether beneficial, benign, adverse, or of an undetermined character, triggers the formal consultation requirement." *W. Watersheds Project v. Kraayenbrink*, 632 F.3d 472, 496 (9th Cir. 2011) (cleaned up); *see Ctr. for Biological Diversity v. NOAA Fisheries*, 644 F. Supp. 3d 574, 576 (N.D. Cal. 2022) (describing the consultation process).

### 2. National Environmental Policy Act (NEPA)

NEPA requires federal agencies to prepare an environmental-impact statement (EIS) for "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C); *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 336–37 (1989). The term "major Federal action" means an action that the agency "determines is subject to substantial Federal control and responsibility." 42 U.S.C. § 4336e(10)(A); *see Metcalf v. Daley*, 214 F.3d 1135, 1142 (9th Cir. 2000) (describing the process where an agency's regulations do not categorically require an EIS). Because NEPA does not provide a private right of action, plaintiffs must challenge agency action under the APA. *Nuclear Info. & Res. Serv. v. Nuclear Regul. Comm'n*, 457 F.3d 941, 950 (9th Cir. 2006).

United States District Court
Northern District of California

### 3. Ports and Waterways Safety Act (PWSA)

The PWSA authorizes the Coast Guard to "construct, operate, maintain, improve, or expand vessel traffic services," which are "measures for controlling or supervising vessel traffic or for protecting navigation and the marine environment," in ports or places under U.S. jurisdiction. 46 U.S.C. § 70001(a)(1). To provide "safe access routes for the movement of vessel traffic proceeding to or from ports or places," the Coast Guard designates vessel-routing measures (including fairways and traffic-separation schemes) for vessels operating in the territorial sea (extending twelve miles from the shoreline) and in the high-sea approaches to U.S. ports. *Id.* § 70003(a). A traffic-separation scheme separates opposing streams of vessel traffic through designated traffic lanes. 33 C.F.R. § 167.5(b); *id.* § 167.5(c) (a traffic lane is "an area within defined limits in which one-way traffic is established"). A fairway is "a lane or corridor in which no artificial island or fixed structure" is permitted. *Id.* § 166.105(a).

Before designating a traffic-separation scheme, the Coast Guard must conduct a PARS that analyzes potential traffic density and the need for safe-access routes for vessels. 46 U.S.C. § 70003(c)(1). The Coast Guard coordinates with the Secretaries of State, the Interior, Commerce, and the Army, and the Governors of affected states to "take into account all other uses of the area under consideration." *Id.* § 70003(c)(2). The Coast Guard also must consider "all relevant factors concerning navigation and vessel safety, protection of the marine environment, and the safety and security of United States ports and waterways." *Id.* § 70004(1); *see id.* § 70004(1)(A)–(I); *id.* § 70031(1) (defining "marine environment"). Designation of a traffic-separation scheme must recognize "the paramount right of navigation over all other uses." *Id.* § 70003(a).

After the Coast Guard completes a PARS, it must "promptly" issue a notice of proposed rulemaking for any designation contemplated as a result of the study or publish a Federal Register notice that no designation is contemplated and the reasons why. *Id.* § 70003(d)(2). The Coast Guard may submit the traffic-separation scheme to the International Maritime Organization (IMO) for consideration or adoption. *Id.* § 70003(e)(4). The IMO does not recognize or publish U.S.

United States District Court
Northern District of California

fairways, but IMO adoption of all other routing measures ensures international recognition and charting by member state hydrographic organizations.[4]

Under Coast Guard policy, a district office completes a PARS and its recommendations are submitted to Coast Guard headquarters. The headquarters' Office of Navigation Systems "validates the recommendations and initiates the Federal rulemaking process and/or IMO's ships routing measures process."[5]

### 4. Administrative Procedure Act (APA)

Judicial review of NEPA and ESA claims are governed by the APA, which limits review to final agency action. 5 U.S.C. § 704. On review of an APA claim, the district court sits as an appellate tribunal and reviews the case as a matter of law. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 867 (9th Cir. 2022). A decision is "final" if it "mark[s] the consummation of the agency's decisionmaking process — it must not be of a merely tentative or interlocutory nature" and must be an action "by which rights or obligations have been determined, or from which legal consequences will flow." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (cleaned up); *see Franklin v. Massachusetts*, 505 U.S. 788, 796–97 (1992) ("To determine when an agency action is final, we have looked to, among other things, whether its impact is sufficiently direct and immediate and has a direct effect on . . . day-to-day business." (cleaned up)).

### STATEMENT

### 1. The 2011 PARS and the Prior Lawsuit

In 2010, the Coast Guard announced that it would re-evaluate the existing traffic-separation schemes serving San Francisco Bay and Los Angeles/Long Beach (including the Santa Barbara

---

[4] Mot. – ECF No. 40 at 11 (citing *SOLAS Chapter V- Safety of Navigation, Regulation 10- Ships' Routeing* (1974), https://wwwcdn.imo.org/localresources/en/OurWork/Safety/Documents/Ships %27%20routeing/Regulation%20V-10And11-ShipsRouteingAndShipReportingSystems.pdf).

[5] Reply – ECF No. 45 at 9–10 (quoting Commandant Instruction 16003.2C, App. D at D-1 (Sep. 2025)); Commandant Instruction 16003.2B (June 28, 2019), Ex. 3 to Sundook Decl. – ECF No. 40-2 at 50–78.

ORDER – No. 25-cv-09109-LB                    5

United States District Court
Northern District of California

Channel). In 2011, it published notices of availability for the resulting studies.[6] The 2011 notices stated that the Coast Guard "will follow the Federal rulemaking process for implementation of any of the proposed changes to the traffic separation schemes," including ESA § 7 consultation with the National Marine Fisheries Service (NMFS).[7] The Coast Guard proposed amendments to the IMO, which adopted them in December 2012, and they became effective June 1, 2013.[8] *Ctr. for Biological Diversity*, 644 F. Supp. 3d at 583.

The Coast Guard then consulted with the NMFS under ESA § 7, and the NMFS finalized an opinion in 2017 that examined the effects of the action on listed whales and sea turtles. *Id.* at 583–84. The opinion determined that the schemes were likely to reduce the risk posed by vessel traffic to the species in the approaches to the ports of San Francisco and Los Angeles/Long Beach. *Id.* at 584. In April 2020, after the plaintiffs notified it of their intent to sue, the Coast Guard requested reinitiation of consultation with the NMFS on the 2017 opinion based on later-published scientific literature and the identification of two newly listed species.[9] *Ctr. for Biological Diversity v. NOAA Fisheries*, No. 4:21-cv-00345-KAW – ECF No. 25 at 9. In January 2021, the plaintiffs sued the NMFS and the Coast Guard, challenging the 2017 opinion and the Coast Guard's reliance on it. The court held that the 2017 opinion was arbitrary and capricious because it lacked an incidental-take statement, held that the Coast Guard's reliance on it was arbitrary and capricious, and vacated the opinion. *Ctr. for Biological Diversity*, 644 F. Supp. 3d at 588–89.

---

[6] 75 Fed. Reg. 17562 (Apr. 7, 2010); 76 Fed. Reg. 35805 (June 20, 2011); 76 Fed. Reg. 67395 (Nov. 1, 2011).

[7] 76 Fed. Reg. at 35806; 76 Fed. Reg. at 67396.

[8] After the completion of the San Francisco PARS and the Los Angeles/Long Beach PARS, the Coast Guard district office submitted the studies to the Commandant via the Coast Guard Office of Navigation Systems, which worked with the State Department and the National Oceanic and Atmospheric Administration (NOAA) to submit formal recommendations on the California traffic-separation schemes to the IMO Navigation Subcommittee, which thereafter adopted and published the schemes in the IMO MSC Circular, which is a notice to mariners. Mot. – ECF No. 40 at 13 (citing COLREG.2/Circ.64 New and Amended Existing Traffic Separation Schemes).

[9] FAC – ECF No. 33 at 22 (¶¶ 93–94); Mot. – ECF No. 40 at 14.

The Coast Guard has never issued a notice of proposed rulemaking (or a no-designation notice) for the measures recommended in the 2011 PARS.[10] On January 15, 2026, it withdrew its request for consultation on codification of the California traffic-separation scheme.[11]

## 2. The PAC PARS

The Coast Guard initiated the PAC PARS in 2021 to determine whether new or modified routing measures were needed for safe navigation along the U.S. Pacific Coast, published a draft study in 2022, and published a notice of availability of the final study on June 5, 2023.[12] The final study recommends six new or amended fairways between San Diego and Seattle. Its recommendations section includes only fairways.[13] The study also discusses (and concurs with) a thirteen-nautical-mile extension of the Santa Barbara traffic separation scheme and an expanded area to be avoided south of that scheme. Those measures were first recommended by a NOAA sanctuary working group in 2016. The Coast Guard submitted the extension to the IMO in 2022, before the study issued, and the IMO adopted it.[14]

The Coast Guard has not issued a notice of proposed rulemaking for the fairways recommended in the PAC PARS or a notice that no designation is contemplated. The IMO does not adopt fairways and will not be asked to adopt these. NOAA has not amended nautical charts to reflect the recommendations. The Coast Guard initiated an environmental analysis to support possible codification of the fairways, but it may decline to implement the recommendations or may depart from them based on stakeholder input, public comments, or the environmental

[10] FAC – ECF No. 33 at 27 (¶¶ 123–24, 128).

[11] Letter, Ex. 2 to Finnegan Decl. – ECF No. 25-2 at 7–8.

[12] 86 Fed. Reg. 40791 (July 29, 2021); 87 Fed. Reg. 52587 (Aug. 26, 2022); 88 Fed. Reg. 36607 (June 5, 2023).

[13] Final PAC PARS, Ex. 1 to Kilduff Decl. – ECF No. 44-1 at 38–41 (Recommendations); O'Brien Decl. – ECF No. 40-1 at 2 (¶ 3). The defendants inadvertently attached the 2022 draft study to their motion; the final study is in the record, and the parties agree that the recommendations do not differ substantively. Reply – ECF No. 45 at 7 n.1.

[14] Final PAC PARS – ECF No. 44-1 at 28, 43; Reply – ECF No. 45 at 7–8; Opp'n – ECF No. 44 at 17.

ORDER – No. 25-cv-09109-LB                    7

United States District Court
Northern District of California

analysis.[15] One agency has referred to the recommended fairways: the Bureau of Ocean Energy Management's offshore-wind lease-sale notices in 2022 and 2024 observed that the fairways avoid the lease areas.[16]

### 3.  Procedural History

The FAC has three claims: (1) claim one for the Coast Guard's failure to complete the consultation required under the ESA, 16 U.S.C. § 1536(a)(2), for the Los Angeles/Long Beach PARS, the San Francisco Bay PARS, and the PAC PARS; (2) claim two for the failure to prepare an environmental assessment or an EIS under NEPA, 42 U.S.C. § 4332(C), for the PAC PARS, in violation of the APA, 5 U.S.C. § 555(b) & 706(1); and (3) claim three for unreasonably delayed notice of rule-making for the Los Angeles/Long Beach PARS, the San Francisco Bay PARS, and PAC PARS, in violation of the PWSA, 46 U.S.C. § 70003(d)(2), and the APA, 5 U.S.C. § 555(b) & 706(1).[17] The court has federal-question jurisdiction. 28 U.S.C. § 1331. The parties consented to magistrate-judge jurisdiction. *Id.* § 636(c)(1).[18] The court held a hearing on the motion to dismiss on June 11, 2026.

**STANDARD OF REVIEW**

### 1.  Rule 12(b)(1)

A complaint must contain a short and plain statement of the grounds for the court's jurisdiction. Fed. R. Civ. P. 8(a)(1). The party asserting jurisdiction has the burden of establishing it. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 778–79 (9th Cir. 2000).

A defendant can move to dismiss a complaint for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Mootness and ripeness pertain to the court's subject-matter jurisdiction and are

---

[15] O'Brien Decl. – ECF No. 40-1 at 2 (¶¶ 4–5, 7).

[16] 87 Fed. Reg. 64093, 64096 (Oct. 21, 2022); 89 Fed. Reg. 71398, 71402 (Sep. 3, 2024); Opp'n – ECF No. 44 at 18.

[17] FAC – ECF No. 33 at 24–28 (¶¶ 103–32); Opp'n – ECF No. 44 at 10, 30 (limiting claim two to the PAC PARS).

[18] Stipulation – ECF No. 26 at 2.

United States District Court
Northern District of California

properly raised in a Rule 12(b)(1) motion. *Prutehi Litekyan: Save Ritidian v. U.S. Dep't of Airforce*, 128 F. 4th 1089, 1120 (9th Cir. 2025). The APA's final-action requirement is treated as jurisdictional. *S.F. Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019).

A Rule 12(b)(1) jurisdictional attack can be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). In a facial attack, the challenger asserts that the allegations, taken as true, are insufficient on their face to invoke federal jurisdiction. In a factual attack, the challenger disputes the truth of the allegations that otherwise would invoke jurisdiction. It may rely on evidence (such as declarations). The court can consider the evidence without converting the motion to a summary-judgment motion and need not presume the truth of the plaintiff's allegations. *Id.*; *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). The plaintiff must present evidence to satisfy its burden of establishing that the court has subject-matter jurisdiction. *St. Clair v. City of Chico*, 880 F.2d 199, 201 (9th Cir. 1989).

## 2. Rule 12(b)(6)

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief to give the defendant fair notice of the claim and the grounds upon which it rests. Fed. R. Civ. P. 8(a); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). It must plead enough facts to state a claim that is plausible on its face. *Twombly*, 550 U.S. at 570. A complaint also must plead a cognizable legal theory. *Woods v. U.S. Bank N.A.*, 831 F.3d 1159, 1162 (9th Cir. 2016).

## ANALYSIS

## 1. Claim One: the PAC PARS is Not Reviewable Agency Action Under ESA § 7

Claim one is brought under the ESA's citizen-suit provision.[19] 16 U.S.C. § 1540(g)(1)(A); *Wash. Toxics Coal. v. EPA*, 413 F.3d 1024, 1034 (9th Cir. 2005); *W. Watersheds Project*, 632

---

[19] The defendants framed the issue initially as whether the PAC PARS was final agency action under the APA. Mot. – ECF No. 40 at 18. The plaintiffs raised the ESA citizen-suit provision. Opp'n – ECF No. 44 at 10. The defendants reframed the issue as "the scope of . . . 'agency action' under the ESA can serve as a proxy for the APA's 'final agency action' requirement." Reply – ECF No. 45 at 9 (quoting

United States District Court
Northern District of California

F.3d at 495–97. The question thus is whether the PAC PARS is "agency action" within the meaning of ESA § 7(a)(2), 16 U.S.C. § 1536(a)(2). That term is construed broadly. *Karuk Tribe*, 681 F.3d at 1020. There is "agency action" when (1) the agency "affirmatively authorized, funded, or carried out the underlying activity" and (2) the agency had "some discretion to influence or change the activity for the benefit of a protected species." *Id.* at 1021; 50 C.F.R. § 402.02 (includes "actions directly or indirectly causing modifications to the land, water, or air").

The PAC PARS is not agency action because it does not authorize or carry out anything. The decisions finding agency action involve agency conduct that permits, funds, or sets the governing terms for an underlying activity: renewing water contracts, adopting interim management strategies, the ongoing construction and operation of a dam, the approval and registration of pesticides, and issuing fishing permits. *Karuk Tribe*, 681 F.3d at 1021 (collecting cases). All involve certainty of action, the end point of decision-making, and a binding nature.[20] The PAC PARS, by contrast, is a study that recommends six fairways to Coast Guard headquarters. The recommendations bind no one and govern nothing: they take effect only if headquarters validates them and the Coast Guard codifies them through notice-and-comment rulemaking, which may never happen and which, if it does happen, may depart from the recommendations.[21] The recommended fairways are not charted, will not be submitted to the IMO, and prohibit nothing today. The activity that affects listed species (vessel traffic) is not authorized, funded, or carried out by the study, and the study does not "directly or indirectly caus[e] modifications to the . . . water." 50 C.F.R. § 402.02.

The plaintiffs' authorities are distinguishable. In *Center for Biological Diversity v. U.S. EPA*, the Ninth Circuit held that the EPA's recommended water-quality criteria were agency action, but it emphasized that the EPA itself "directly implements the criteria in its federal cleanup program, incentivizes States to adopt them as binding water quality criteria, and directly promulgates them in certain States and tribal lands." 168 F.4th 1164, 1180 (9th Cir. 2026). Thus, the

---

*Nat. Res. Def. Council v. Kempthorne*, No. 1:05-CV-01207 OWW TAG, 2008 WL 5054115, at *9 n.5 (E.D. Cal. Nov. 19, 2008), *superseded in part*, 621 F. Supp. 2d 954 (E.D. Cal. Apr. 27, 2009)).

[20] Reply – ECF No. 45 at 9 (making this point).

[21] O'Brien Decl. – ECF No. 40-1 at 2 (¶ 7); Reply – ECF No. 45 at 9–10.

ORDER – No. 25-cv-09109-LB                   10

United States District Court
Northern District of California

recommendations carried "clear regulatory authority." *Id.* at 1178 (cleaned up). The PAC PARS recommendations have no comparable operative role: the Coast Guard implements them nowhere, and nothing turns on them unless and until rulemaking occurs. In *Environmental Defense Center v. Bureau of Ocean Energy Management*, the programmatic documents "affirmatively authorized" private companies to proceed with offshore fracking. 36 F.4th at 884–85. The PAC PARS authorizes no activity, public or private. And the land-management plans in *Pacific Rivers Council v. Thomas*, 30 F.3d 1050, 1051–53 (9th Cir. 1994), and *Lane County Audubon Society v. Jamison*, 958 F.2d 290, 293–94 (9th Cir. 1992), established criteria that governed every subsequent project in the planning areas. The PAC PARS sets no criteria that govern any subsequent decision: the Coast Guard remains free to adopt its recommendations in whole, in part, or not at all. Finally, voluntary responses by third parties (mariners or other agencies choosing to take account of recommended fairways) do not transform a study into agency action: the inquiry remains what the agency itself authorized, funded, or carried out. *Cf. Columbia Riverkeeper v. U.S. Coast Guard*, 761 F.3d 1084, 1094–95 (9th Cir. 2014) (Coast Guard recommendation letter that "does not have any conclusive legal effect" was not reviewable).

For similar reasons, the claim is premature. If the PAC PARS does not trigger a § 7 duty, then there is no completed procedural violation to review, and judicial intervention now would interfere with an ongoing administrative process — the Coast Guard's environmental analysis supporting possible codification — that has not reached an "administrative resting place." *Cottonwood Env't Law Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1083–84 (9th Cir. 2015); *Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726, 732–33 (1998). If the Coast Guard proceeds to rulemaking, the plaintiffs may participate and may challenge the resulting action, including any failure to consult.

Whether the defect is characterized as jurisdictional (ripeness) or as the absence of an element of the § 7 claim (no agency action), the result is the same: the court dismisses the portion of claim one challenging the PAC PARS without prejudice to renewing the claim if the Coast Guard takes action implementing the study's recommendations.

## 2.   Claim Two: the PAC PARS Is Not Justiciable

NEPA does not provide a private right of action. Instead, judicial review of NEPA claims is under the APA and is limited to "final agency action." 5 U.S.C. § 704; *Env't Def. Ctr.*, 36 F.4th at 867. To be final, an action must "(1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189, 1200 (9th Cir. 2025) (cleaned up) (citing *Bennett*, 520 U.S. at 178). The PAC PARS satisfies neither requirement.

First, the study is not the consummation of the Coast Guard's decisionmaking about routing measures: it is, by statute, an early step. "Before making a designation," the Coast Guard "shall . . . undertake a study." 46 U.S.C. § 70003(c)(1). After the study, the agency must either issue a notice of proposed rulemaking for any designation contemplated or publish notice that none is contemplated, *id.* § 70003(d)(2), and any designation is implemented through rulemaking, *id.* § 70003(e)(1). The study's recommendations must be validated by Coast Guard headquarters, may never be proposed in a rule, and (if proposed) may change through notice and comment and the ongoing environmental analysis.[22] The completed study marks the end of the study, not the end of the decision. The "post-adjudication" label on the study's map appendices does not show otherwise: in context, it signifies that public comments on the draft study were adjudicated, not that the recommendations are final.[23] *Defenders of Wildlife v. Gutierrez* is the plaintiffs' closest authority, but the traffic-separation schemes there had been adopted by the IMO and were in operation. 532 F.3d 913, 926–27 (D.C. Cir. 2008). Here, the recommended fairways have not been adopted by anyone: the IMO does not recognize or publish U.S. fairways (and thus will not be asked to adopt them), and the Coast Guard has not codified them.

Second, no rights or obligations have been determined by, and no legal consequences flow from, the PAC PARS. The construction prohibition on which the plaintiffs rely, 33 C.F.R. §

---

[22] O'Brien Decl. – ECF No. 40-1 at 2 (¶ 7); Reply – ECF No. 45 at 9–10.

[23] Final PAC PARS – ECF No. 44-1 at 7 (listing "Draft Study Public Comments Adjudication").

ORDER – No. 25-cv-09109-LB                 12

166.105(a), attaches to fairways designated in the regulations, not to fairways recommended in a study. Nothing currently prohibits structures in the recommended corridors. Recommendations that require further agency approval to become effective are not final agency action. *Dalton v. Specter*, 511 U.S. 462, 468–70 (1994); *Columbia Riverkeeper*, 761 F.3d at 1094–95. The decisions the plaintiffs invoke involved agency acts with immediate operative effect: the limited notices to proceed in *Tohono O'odham Nation* "expressly grant[ed] . . . the right to begin construction," 138 F.4th at 1201, and the Park Service in *San Francisco Herring Association* enforced a fishing ban and expected "immediate compliance," 946 F.3d at 577–80. Voluntary conformity by third parties is not a legal consequence of the study: the local notices to mariners merely "encourage" vessels to avoid certain areas and predate the final study, and the Bureau of Ocean Energy Management's lease-sale notices (including the first, which predates the final study) reference the recommended fairways without being bound by them.[24]

The result is the same for the Santa Barbara traffic-separation-scheme extension and the expanded area to be avoided. Those measures originated in a 2016 sanctuary working-group recommendation. The Coast Guard submitted the extension to the IMO in 2022, before the study issued. The study concurred with (but did not adopt or implement) the proposal.[25] Whatever the reviewability of the 2022 IMO submission or the IMO's subsequent adoption, the operative complaint challenges the PAC PARS, and the study's concurrence in a measure proposed elsewhere determined no rights or obligations.[26]

Because the PAC PARS fails both *Bennett* prongs, the NEPA challenge is also unripe for the reasons given above: the Coast Guard has not formalized its decisionmaking, and the plaintiffs may comment on, and if appropriate challenge, any eventual rulemaking and its accompanying environmental review. *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 924–25 (9th Cir. 1999). The plaintiffs limited claim two to the PAC PARS, so this disposes of claim two entirely.

---

[24] Local Notice to Mariners (July 28, 2021), Ex. 2 to Kilduff Decl. – ECF No. 44-1 at 47–93; 87 Fed. Reg. at 64096; 89 Fed. Reg. at 71402; Reply – ECF No. 45 at 17–18.

[25] Final PAC PARS – ECF No. 44-1 at 28, 43; Reply – ECF No. 45 at 7–8.

[26] FAC – ECF No. 33 at 19–20 (¶¶ 85–87), 26 (¶ 117); Reply – ECF No. 45 at 7–8 (the complaint does not challenge the 2022 submission).

United States District Court
Northern District of California

The court dismisses it, without prejudice, for lack of subject-matter jurisdiction. The defendants' alternative arguments — that a NEPA challenge to the 2011 California traffic-separation scheme is time-barred under 28 U.S.C. § 2401(a)'s six-year statute of limitations or barred by res judicata — are directed at a claim the plaintiffs disclaim, and the court denies them as moot.

### 3.  Claim Three: Whether Res Judicata Bars the Delay Challenge to the 2011 PARS

Claim preclusion "bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action." *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997). It applies when there is "(1) an identity of claims, (2) a final judgment on the merits, and (3) privity between parties." *Stratosphere Litig. L.L.C. v. Grand Casinos, Inc.*, 298 F.3d 1137, 1142 n.3 (9th Cir. 2002). The central criterion for identity of claims is "whether the two suits arise out of the same transactional nucleus of facts," which depends on "whether they are related to the same set of facts and whether they could conveniently be tried together." *Frank v. United Airlines, Inc.*, 216 F.3d 845, 851 (9th Cir. 2000) (cleaned up); *ProShipLine Inc. v. Aspen Infrastructures Ltd.*, 609 F.3d 960, 968 (9th Cir. 2010) (cleaned up). The plaintiffs concede a final judgment on the merits and privity; the only dispute is identity of claims.[27]

The two suits share facts. In the prior case, the same plaintiffs sued the Coast Guard (and NMFS) over the same California traffic-separation scheme (the routing measures recommended in the 2011 PARS) and obtained vacatur of the 2017 biological opinion. *Ctr. for Biological Diversity*, 644 F. Supp. 3d at 588–89. The current claim — that the Coast Guard unreasonably delayed the notices that § 70003(d)(2) requires after the 2011 PARS — arises from the Coast Guard's conduct following the same studies regarding the same measures. The plaintiffs themselves represented that the two actions "both center on USCG's ongoing designation and amendment of routing measures, including the conducting of port access route studies (PARS) and the effects on endangered and threatened species."[28] By January 2021, nearly a decade had passed since the

---

[27] Opp'n – ECF No. 44 at 31 n.6.

[28] Pls.' Admin. Mot. to Consider Whether Cases Should Be Related – ECF No. 5 at 3.

United States District Court
Northern District of California

2011 PARS without a notice of proposed rulemaking or a no-designation notice; the facts underlying a delay claim existed and were apparent. "[W]here claims arise from the same factual circumstances, a plaintiff must bring all related claims together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding." *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012).

The plaintiffs respond that they "trusted" the Coast Guard's statements that rulemaking would follow and did not know until the January 15, 2026, withdrawal of the consultation request that codification would not occur.[29]

Arguably, the trust that the plaintiffs placed in the Coast Guard does not defeat preclusion. "Ignorance of a party does not . . . avoid the bar of res judicata unless the ignorance was caused by the misrepresentation or concealment of the opposing party." *W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 871–72 (9th Cir. 1992). The statements the plaintiffs cite are generic 2011 Federal Register passages promising future rulemaking, not representations made to the plaintiffs close in time to their 2021 suit, and not concealment. More fundamentally, the premise of an unreasonable-delay claim is that the agency has not yet acted: the plaintiffs did not need to know that the Coast Guard would never act, only that it had long not acted, which was apparent in 2021. Their own current pleading proves the point: claim three also challenges delay in rulemaking on the PAC PARS even though the Coast Guard represents that its decision-making on that study is ongoing. If an ongoing administrative process did not stop them from pleading delay as to the PAC PARS, perhaps it should not have stopped them from pleading delay as to the 2011 PARS in 2021.

On the other hand, claim preclusion arguably does not bar the delay claim because the claims lack the required identity. Claim preclusion does not bar claims that accrued after the filing of the complaint in the first action. *See Howard v. City of Coos Bay*, 871 F.3d 1032, 1039–40 (9th Cir. 2017) (collecting cases). A claim under 5 U.S.C. § 706(1) challenges continuing inaction, and the gravamen of the current claim is the Coast Guard's abandonment of the codification path, a

---

[29] Opp'n – ECF No. 44 at 31–32.

development confirmed only by its January 15, 2026, withdrawal of the consultation request.[30] During the prior case, the Coast Guard maintained that consultation on codification of the routing measures was ongoing, and it resisted the litigation on that basis.[31] On those facts, the delay claim rests in material part on agency conduct postdating the prior judgment, and the two suits could not "conveniently be tried together": the first was a record-review challenge to the adequacy of a biological opinion, and this is a failure-to-act claim under the PWSA involving different conduct, evidence, and remedies. *ProShipLine*, 609 F.3d at 968. *Turtle Island* is distinguishable because the plaintiff there knew at least five years before its second suit that the agency was not undertaking the omitted analyses. 673 F.3d at 918.

The issue is close. The distinction is between a delay that was apparent in 2021 and the wrong that this claim pleads. A § 706(1) claim can rest on either dilatory inaction or on a refusal to act. The predicate for claim three is the latter: the Coast Guard's abandonment of the codification path, which became knowable only when it withdrew its consultation request in January 2026. Because that conduct postdates the prior judgment, the claim for a violation of the PWSA could not have been brought previously and does not share an identity of claims with the earlier suit. The motion to dismiss claim three is denied.

## CONCLUSION

The motion to dismiss the PAC PARS portion of claim one and claim two entirely is granted. The motion to dismiss claim three is denied. The remaining claims are claim one's challenge to the Los Angeles/Long Beach PARS and the San Francisco Bay PARS under the ESA and claim three's challenge to the Los Angeles/Long Beach PARS, the San Francisco Bay PARS, and the PAC PARS under the PWSA. This resolves ECF No. 40.

**IT IS SO ORDERED.**

Dated: July 13, 2026

_____
LAUREL BEELER
United States Magistrate Judge

---

[30] Letter, Ex. 2 to Finnegan Decl. – ECF No. 25-2 at 7–8.

[31] Opp'n – ECF No. 44 at 31 (citing *Ctr. for Biological Diversity v. NOAA Fisheries*, No. 4:21-cv-00345-KAW, 2021 WL 3771784, at *1 (N.D. Cal. Aug. 23, 2021)).

ORDER – No. 25-cv-09109-LB                    16